[No. 3312. Aug. 14, 1929.]

In re CHAVEZ'S ESTATE.

STATE v. CHAVEZ.

[280 Pac. 241.]

J. Frank Curns and J. W. Chapman, both of Santa Fe, for the State.

E. R. Wright, of Santa Fe, for appellee.

Raymond R. Ryan, of Albuquerque, amicus curiæ.

## OPINION OF THE COURT

SIMMS, J.   The one question presented by this appeal is whether or not a succession tax under chapter 179, Laws of 1921, is payable upon the interest of a deceased wife in community property, the husband surviving.

Section 2, c. 179, Laws of 1921, provided: "All estates (of deceased persons) which shall pass by will or inheritance or by other statutes * * * shall be liable to" a succession tax.

The question then narrows down to this: Does the surviving husband take the wife's interest in the community property by "inheritance" or "other statutes" within the meaning of the Act of 1921? In this state the wife has no testamentary power over any part of the community property.

An examination of the history of community property legislation in this and other states might prove interesting and instructive; but, as we view the matter, it is neither necessary nor helpful in the present case for the reason that we have before us a matter of statutory construction only. By chapter 37 of the Laws of 1907, the Legislature of this state undertook to treat the whole matter of the property rights of husband and wife. Entitling the act "An Act in Relation to Property Rights of Husband and

Wife," the Legislature endeavored to define the mutual obligations and duties of the spouses during the continuance of marital relation; it dealt with their rights to contract, treated the matter of their separate property, separation agreements, earnings, liability for debts, and the management of the community property during coverture; it abolished dower and courtesy, provided for the eventuality of the death of either spouse; and even went so far as to authorize a judicial change of the head of the community when the husband became disqualified. In other words, the act seems to be a comprehensive effort to define and treat the subject of community property, and so far as the present inquiry is material, its pertinent sections are as follows:

Section 7 (section 2756, Code 1915, under title, "Husband and Wife"):

"*May be Joint Tenants, etc.*

"Husband and wife may hold property as joint tenants, tenants in common, or as community property."

Section 10 (section 2764, Code 1915, under title "Husband and Wife"):

"*Community Property—Conveyances by Married Women. * * ***

"All other property acquired after marriage by either husband or wife, or both, is community property; but whenever any property is conveyed to a married woman by an instrument in writing the presumption is that title is thereby vested in her as her separate property. And if the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common, unless a different intention is expressed in the instrument. * * *"

Section 26 (section 1840, Code 1915, under title "Descent and Distribution"):

"*Distribution of Common Property on Death of Wife.*

"Upon the death of the wife, the entire community property, without administration, belongs to the surviving husband, except such portion thereof as may have been set apart to her by a judicial decree, for her support and maintenance, which portion is subject to her testamentary disposition, and in the absence of such disposition, goes to her descendants, or heirs, exclusive of her husband."

Section 27 (section 1841, Code 1915, under title "Descent and Distribution") :

*"Distribution of Common Property on Death of Husband.*

"Upon the death of the husband one-half of the community property goes to the surviving wife and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition goes one-fourth to the surviving wife and the remainder in equal shares to the children of the deceased and further as provided by law. In the case of the dissolution of the community by the death of the husband the entire community property is equally subject to his debts, the family allowance and the charge and expenses of administration."

Section 28 (section 1842, Code 1915, under title "Descent and Distribution") :

*"Further Succession to Property.*

"Subject to the provisions of sections 1840 and 1841 of this article when any person having title to any estate, not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to and must be distributed subject to the payment of his debts in the following manner: One-fourth thereof to the surviving husband or wife and the remainder in equal shares to the children of decedent and further, as provided by law."

It is evident that the title to community property is a different and distinct thing from either tenancy in common or joint tenancy. What are the incidents or attributes of the community title? We must look to the statute for our answer, instead of to the common law, as we might in cases of either of the other two classes of tenancy, both of which are known to the common law. Community property is, however, a concept foreign to the English common-law system, and with us is a creature of statute.

Certain peculiarities incident to community property are mentioned in the statute. It is optional with the spouses to take otherwise than as tenants of the community estate. Where the wife's name is inserted as grantee or one of the grantees in the conveyance of real estate, the presumption is against the intention to create community property thereby, as it is apparently not favored as to the wife, and yet the opposite is true as to the husband. Again, the wife is denied testamentary power of disposition of her interest in the community property, while the husband is possessed of the power to control by will the disposition of one-half thereof but is powerless to affect the wife's

interest where she survives him. The husband, if he survives the wife, is not required to administer upon the community estate, the entire corpus of which belongs to him without administration, and yet the wife must submit to administration upon the community estate if she survives the husband. The husband is the manager of the community property, with control as complete as he has over his separate estate (except for certain restrictions in conveyancing and as to testamentary power over the one-half part thereof), and yet where he becomes incompetent, under section 29 of the act (Code 1915, § 2767), provision is made to substitute the wife as head of the community in his place.

Community estate is a marital estate, incapable of existing except between husband and wife during coverture. Upon divorce, the spouses become substantially tenants in common; upon death of either, the estate terminates and a separate estate results, always subject to community debts and charges.

Coming now to a consideration of sections 26 and 27, supra, which are sections 1840 and 1841 of the Code of 1915, as we will speak of them hereinafter, what effect are we to give to the action of the codifiers in placing them under the general heading "Descent and Distribution," while sections 7 and 10, supra (sections 2756 and 2764 of the Code of 1915), are found under the heading "Husband and Wife"? Are sections 1840 and 1841 statutes of descent and distribution, in their entirety, or are they statutes which operate to fix and determine the nature of community property immediately upon its acquisition by the spouses as a community, in so far as they treat of the rights of the husband and wife in that species of property? Are we to determine the legislative intent, as expressed in these enactments, from the substance of the several sections, or shall we simply consult the headnotes over each section, which, as to sections 1840 and 1841, use the term "Distribution of Common Property?"

When the Legislature enacted this statute it was, and still is, the general rule and course of society for the husband to manage the business affairs and property of the

community, and for the wife to make and keep the home of the family. The husband generally incurs the debts of the community and must either pay them, or the creditors of the community may subject its assets to their claims. The death of one spouse brings a different train of immediate consequences to the common property from that effected by the death of the other. In either case, the community is dissolved. But where the husband dies, the business must be liquidated, community debts must be paid, and distribution must be made pursuant to the terms of the husband's will, if he leaves one, and otherwise according to law. Administration is absolutely necessary to effect these results. On the other hand, where the wife dies, while the family life is shattered there is no necessity to liquidate the business of the community for the reason that the community assets and the management thereof remain intact, the community debts continue, and the assets and debts become separate estate and separate debts of the husband. Unless to distribute an interest to the wife's heirs, administration would be futile. The statute, therefore, provides in the inception of the community estate for the ceasing of the wife's interest on her death. No other course would be logical unless the lawmakers desired to add to the sorrows of a bereaved husband the further burden of the enforced liquidating of his business affairs upon the death of his wife.

As the Legislature has recognized the estate known as joint tenancy, wherein as an incident there is the vesting of the entire estate in the survivor, not by inheritance but by virtue of the creation of the estate, so it has created another and different class of tenancy known as community property, wherein this right of survivorship inures as to the entire estate in the husband, if he survives, but only as to the half if the wife survives. We know of no reason to suppose that such a statute is not within the lawmaking power, especially where it creates a marital or community estate. If the wife has not been fairly treated in the matter, the Legislature is the department of government to which she should appeal for more exact justice.

It is evident that our statute, chapter 37 of the Laws of 1907, creates and defines the community estate with

such incidents as we have discussed, among them being the right of survivorship in the husband as to the whole of the community property, and that it dispenses with administration as illogical and unnecessary. The use of the words "Distribution of Common Property" as head-notes to sections 1840 and 1841, and the codification there-of under the heading "Descent and Distribution," do not change the effect we have mentioned nor alter the evident purpose of these sections to establish and define the nature of the community title and the effect upon it of the death of either spouse. We accordingly hold that, in so far as they prescribe the respective rights of husband and wife as the survivor of the community, sections 1840 and 1841 are not statutes of "inheritance" or of "descent and distribution."

Concluding thus, that the death of Elizabeth Chavez resulted, as to her interest in the community property, in no "inheritance" by appellee, we have still to inquire whether such interest constitutes an estate of a deceased person passing to him by "other statute."

It cannot be questioned that appellee is now the owner of this community property by virtue of section 1840; not the owner of one-half of it, as contended by the state, but the owner of all of it. Under the familiar rule of ejusdem generis, the term "other statutes" is limited to other forms of passing similar to or in the nature of a "passing" by will or by inheritance. The expression would seem at first blush to be broad enough to cover the "passing" which takes place upon the death of one of the spouses who are seized as joint tenants. Yet abundant authority is available to show that such a "passing" is not within the scope of inheritance tax statutes, unless expressly included. So, unless we were to say, which we cannot, that the term "other statutes" includes the devolution of estates in joint tenancy, there is no justification for saying that it includes the devolution, similar in principle, of community property to the surviving husband.

The rule of ejusdem generis is but a canon of construction. If it were made plain by the statute of 1921 that community property was included, canons of con-

struction would not be resorted to. But a careful reading of the statute fails to disclose anything upon which to base a reasonable contention that the Legislature, in enacting it, had in mind the consequences or the procedure of assessing and collecting the tax on the occasion of the dissolution of the community by death of the wife.

Nor do the conclusions we have reached in this case conflict with the principles announced in Beals v. Ares, 25 N. M. 499, 185 P. 780, nor Baca v. Belen, 30 N. M. 546, 240 P. 803, 805. In the former case we had before us the question of dividing the community property between the living spouses whose community was destroyed by divorce. In that case we held that the wife's interest in the community property was equal to that of the husband, and regardless of the fact that the statute makes him manager of the community, his rights were not superior to hers. There was no question in that case as to what their respective rights may have been in case either had died during the existence of the community. We know of no reason why the Legislature is not able to provide survivorship in favor of one spouse and deny it to another while recognizing that so long as they live and remain members of the marital community the rights of one are not of an inferior nature to those of the other. In Baca v. Belen, supra, we defined the rights of a wife in the community property during coverture as "a present, existing, vested interest, equal in all respects to the interest of the husband," following Beals v. Ares, supra. The question before us in the Baca Case was whether or not a married woman, living with her husband who had paid a property tax on community property, could vote in a bond election as a property owner. We need not question the soundness of either of the two cases when we confine them to exactly what they decided.

Holding, as we do, that there was no estate of the wife which survived her death, none could be taxable, and it becomes unnecessary to discuss the right of the state to seek administration to enforce the tax. Finding no error in the judgment of the district court, it should be affirmed, and the cause remanded; and it is so ordered.

WATSON and CATRON, JJ., concur.

BICKLEY, C. J. (dissenting). In my opinion, sections 26, 27, and 28 of chapter 37, Laws 1907 (sections 1840, 1841, and 1842, Code 1915), deal with the devolution of the interest of husband and wife in community property and were not intended to define the nature of such interest. When the Legislature said in section 7 of the act (Code 1915, § 2756) that the husband and wife may hold property as joint tenants, tenants in common, or as community property, it was supposed that these forms of tenure were understood, and that they are distinct from each other.

The statute does not undertake to define either class of holding. We are left to history and definition as found in the books to determine the nature of each of these estates. From our pronouncement in Beals v. Ares, 25 N. M. 499, 185 P. 780, and Baca v. Belen, 30 N. M. 546, 240 P. 803, 805, it appears that the interest of the wife in community property during the continuance of the marriage relation is "a present, existing, vested interest." As that proposition is not assailed in the opinion of the majority, it is not necessary to defend it.

Granted the truth of this principle, the conclusion is necessarily true that upon the death of the wife, a transmission of her interest in the community property occurs by virtue of section 1840, Code 1915, whether said section be regarded as a statute of descent and distribution or "other statute" within the contemplation of the succession tax statute.

The majority draw from this, and the section following, the conclusion that the Legislature has made community property an estate like the estate known as joint tenancy, and that the surviving husband, upon the death of the wife, takes the interest the wife had in community property during her lifetime, by survivorship by virtue of the creation of the estate.

The law-writers, in an endeavor to define community property and who the owner of it really is, have resorted to comparisons with various theories of ownership. Some have maintained that during marriage the ownership of it is in truth with the husband, so large are his powers while

the marriage lasts, of doing what he pleases. Others will make the husband and wife co-owners, each of them being entitled to an aliquot share of the undivided mass. Others, again, will postulate a juristic person to bear the ownership, some kind of corporation of which the husband and wife are the two members. An idea very like tenancy by entireties has occurred to one school of expositors. Another deems the relation between husband and wife so unique that it condemns as useless all attempts to employ any of the ordinary categories of the law, such as partnership or co-ownership. See McKay on Community Property, § 1180. This court, in Beals v. Ares, supra, pronounced in favor of a form of co-ownership, undefined except that it was quite different from the inchoate right of dower, or a mere expectancy or a possibility incident to the marriage relation, contingent on the wife surviving the husband. In the Civil Law of Spain and Mexico, which furnishes the historical background for our community property system, the comparison was generally to a partnership. That was the idea favored in Beals v. Ares, where it was said the wife is "an equal partner with the husband in the matrimonial gains." It was there said, also, that the power of the court to divide the property does not extend further than to set apart to each of the spouses "their undivided half interest in the property." To my mind, this expression is entirely inconsistent with any theory that the interest of the husband and wife in community property is comparable to estates by the entirety or in joint tenancy. An estate by the entirety is an estate in joint tenancy plus the unity of the marital relation. Hoyt v. Winstanley, 221 Mich. 515, 191 N. W. 213. Mr. McKay, at section 1265 of his work on Community Property, shows why this comparison should be excluded:

"Between the form of ownership, whatever it may be, by which community property is held, and the common law estate by entirety, there are essential legal differences which exclude the application of ownership by entireties from community property. Among the most prominent of these is this; estates by entirety are owned by a single person, husband and wife considered as one person, while the law of community recognizes rights in the wife, either a present right in the property or a present right to have a moiety in the future. In either case her legal personality is not merged in the husband nor is husband and wife treated as one person."

The Supreme Court of Arizona in the late case of Forsythe v. Paschal, 271 P. 865, 866, decided that the contrast between the common-law conception of husband and·wife with respect to their property and community law system is pointed out with illustrations: .

"We have considered the nature of that status (marital) in a number of cases. In La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426, Ann. Cas. 1915B, 70, we said:

" 'The law makes no distinction between the husband and wife in respect to the right' each has in the community property. It gives the husband no higher or better title than it gives the wife. It recognizes a marital community wherein both are equal. Its policy plainly expressed, is to give the wife in this marital community an equal dignity, and make her an equal factor in the matrimonial gains.' "

And ·in the Cosper Case, 28 Ariz. 373, 237 P. 175, 176, we said:

"While under the common law the husband and wife were 'one,' and he was always the 'one,' the world has of recent years gone a long way toward recognizing that even a married woman was a human being, with most of the rights·of such, and that the status of marriage partook more of the nature of a partnership than that of master and servant, or guardian and ward."

And we readopted the above language in the case of Hall v. Weatherford (Ariz.) 259 P. 282, 56 A. L. R. 903.

Under our law, therefore, the status of marriage is more analogous to that of a partnership than to any other status known.

Furthermore, it is apparent that joint tenancy is not favored in modern time. In 7 R. C. L. page 813, it is said:

"The estate in joint tenancy presents some of the most artificial rules of subtle distinctions of the ancient common law. It was once highly favored in England. Doubtless for reasons that were feudal in their character and influential in their day, but which have long since ceased to operate. Whatever may have been the causes which led to the origin of this estate, or which recommended it to our ancestors of the feudal period, it is undeniable that in this day it has grown into disfavor both in England and America. The policy of the American law is opposed to survivorship, and, accordingly, legislation abrogating the common law doctrine favorable to joint tenancy and abolishing the doctrine of survivorship has been enacted generally throughout the union."

That it is not favored in New Mexico is apparent from legislative enactment found in section 4762, Code 1915, originally enacted in 1852 as follows:

"All interest in any real estate, either granted or bequeathed to two or more persons other than executors or trustees, shall be held in common unless it be clearly expressed in said grant or bequest that it shall be held by both parties."

Section 10 of chapter 37, Laws 1907 (Code 1915, § 2764), now under consideration, provides:

"If the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common unless a different intention is expressed in the instrument."

We know that the right of survivorship as a characteristic of joint tenancy, if it exists here, is by virtue of the common law and not by any statute, and we know that this form of estate is not favored, and that where it exists in other jurisdictions, the element of survivorship has generally been abolished. I am unwilling by construction to ingraft such an unfavored theory onto our community property system, especially as it has not, so far as can be ascertained, been a feature of the community property estate.

Furthermore, sections 1840, 1841, 1842 of the Code 1915, being sections 26, 27, and 28 of the act under consideration, do not purport to deal with the devolution of property held in joint tenancy. The right of survivorship which is the distinguishing feature of joint tenancy, where it exists, does not depend upon the laws regulating intestate succession. The fact that the statute in question was enacted indicates that the intestate succession of an interest in community property does depend upon stautory direction. The fundamental law of community property is such that, upon the death of the wife, the legal title to a moiety of the community land as well as other property passes to the wife's heirs or devisees, even when the legal title was held by the husband during marriage. McKay on Community Property, § 1276.

Historically, that has been true in the section of our country formerly under the sovereignty of Spain and Mexico for a long time, and by statute afterwards, for over

50 years, and now, unless the Legislature in 1907 had changed the fundamentals. My view is that the only change which has been made is in the succession. In other words, the husband has been substituted for the children as an heir of the decedent. Formerly on the death of one of the spouses, one-half of the community property remaining after the payment of the common debts of the marriage was set aside to the surviving husband or wife absolutely, the remainder was a part of the body of the decedent's estate for descent and distribution and, in the absence of a will, descended one-fourth to the surviving husband or wife and the remainder in equal shares to the children of the decedent. Our Legislature in 1907, by chapter 37, probably as a safeguard against a rupture of the husband's business affairs caused by the wife's death if her descendants took her interest on her death, provided that the husband as survivor takes all the common property. See McKay on Community Property, 1377. This does not mean that such change has had the effect to change the fundamental characteristics of community property, but merely that the surviving husband is substituted for the children of the deceased wife as to three-fourths of her undivided one-half of the community property of which she died seized, thus passing to him all of her share instead of one-fourth thereof.

If it be said that this result is as odious and unjust to the lineal heirs of the deceased wife exclusive of her husband as joint tenancy survivorship is said to be, the answer is that the issue of the marriage would share in it eventually under the intestate laws unless it were diverted by will, and that the Legislature in 1927, chapter 163, "An Act Relating to Succession of Property," afforded mitigation by providing that when the widower dies leaving no issue, then the estate of which he died seized, which was community property of such widower and his deceased wife, while she was living, goes to the children of the deceased wife and to the descendants of such children by right of representation, and in the absence of such, then to the father and mother of such deceased wife, etc. This evinces an intention of the Legislature to deal further by way of succession with the community property to

which a surviving husband (or wife) has succeeded, and is more consistent with a common plan of succession than that upon the death of the wife, the community being dissolved, the community property has lost its conventional characteristics and become the separate estate of the husband through the ancient and discredited process of survivorship as in joint tenancy. I see no more reason to say that the wife's share of the community property which goes to the "surviving husband" upon her death, now goes to him by survivorship, as in joint tenancy, than that the one-fourth of the wife's interest went to such surviving husband by the statute of 1889 (C. L. 1897, §§ 2030, 2031), went to him in that manner. These sections were a part of chapter 90, Laws of 1889, entitled "An Act to Amend the Laws Relative to the Estates of Deceased Persons." That enactment dealt with community property as well as with separate property of husband and wife. Its provisions were placed by the compiler of the 1897 compilation under the title "Inheritance." Community property provisions were compiled under the chapter of "Distribution" in said title. We find section 1840 of our statute, which is the pertinent one, in the Code of 1915 under the chapter "Descent and Distribution." "Succession" denotes the devolution of title to property under the laws of descent and distribution. The title "Descent and Distribution" indicates a grouping of statutory provisions and decisions dealing with the devolution of the property of deceased persons. When we come to consider chapter 37, Laws 1907, we find its title to be "An Act in Relation to Property Rights of Husband and Wife." We find that its provisions deal not only with such property while husband and wife live together, but also after their permanent separation, although not divorced, and also with the devolution not only of their interest in community property, but of their separate property as well. It seems plain, therefore, that it was in part a statute of descent and distribution and the commission which prepared the 1915 Code quite logically put sections 26, 27, and 28 of said chapter into the Code under the general subject of descent and distribution. Section 26 (section 1840 of the Code) is entitled "Distribution of Common Property on Death of Wife." Section 27 (1841

of the Code) is entitled "Distribution of Common Property on Death of Husband." Section 28 (section 1842, of the Code) is entitled "Further Succession to Property." These section headings were not prepared by the publisher or editor of the 1907 Session Laws, but by the Legislature, and are a part of the enactment. These section headings vindicate the judgment of those who prepared the Code. They also show that the Legislature used the word "Succession" and "Distribution" as synonymous. In this situation it appears that it must have been generally understood that the Legislature was dealing with succession to the decedent's interest in community property in the sense that succession is commonly understood. When the Legislature, in passing section 28 of chapter 37, Laws 1907, dealt with the separate property of the spouses and denominated its provisions "Further Succession to Property" and excluded community property which had been treated in the two preceding sections (26 and 27), we have a plain inference that the Legislature thought that community property devolved by succession, in the same way and upon the same principle, as under said section 28. In other words, "Further Succession to Property" characterized the succession provided for in sections 26 and 27 as being of the same character of succession as that provided for in section 28, which dealt with separate property of the spouses, and certainly there can be no doubt that property passing by virtue of section 28 would be liable to a succession tax. The works on statutory construction and interpretation of laws sanction these aids to construction. In Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969, it is said:

"The heading to a section of a statute is proper to be considered in interpreting the statute when ambiguity exists."

In three of the community property states, Idaho, Washington, and Arizona (and in others), there are statutes controlling the succession of decedent's interest in community property. In each of those named, the surviving spouse takes one-half of the community property and the other half is subject to testamentary disposition of the deceased husband or wife, with some limitations not material to this discussion. In Idaho, in case there is

no testamentary disposition, the part belonging to the decedent goes to the surviving spouse. In Washington, in case no testamentary disposition has been made, it goes to the issue of the decedent, and, if there be no issue, then it passes to the surviving husband or wife. In Arizona, in the absence of testamentary disposition, decedent's share goes to his or her descendants and, in the absence of such descendants, goes to the surviving husband or wife. Each of these states has succession tax laws, and in each of them, though without judicial decision, succession taxes are collected upon the half belonging to the deceased when it passes to the survivor. Besides the absence of the power of testamentary disposition in the wife in our statute, the only essential difference between our statute and the Washington and Arizona statutes is that the descendants of the deceased are there made the favored heirs; the surviving husband or wife being called to the inheritance only in the absence of such descendants. In Idaho, this difference does not exist. There the survivor is the favored intestate heir. Although we have no judicial precedent, from Idaho it appears that the taxing officials who administer the succession tax law require the surviving husband to pay an inheritance tax on the wife's half of the community property, in face of the fact that no administration of the estate of the wife is necessary if she dies intestate. See section cited post.

According to the common law, neither spouse inherited from the other. In the United States, however, a surviving spouse is generally an heir of the deceased spouse. McKay on Community Property (2d Ed.) par. 1374. Further, at section 1378, Mr. McKay says:

"In all the community property states, the surviving spouse takes, either by inheritance or some other unnamed mode of transfer, an interest in the estate and property of the deceased, and it might be said is highly favored as heir, and instead of denying inheritance to the survivor he is quickly called to the succession of his deceased spouse, *and especially is this true of the interest of the deceased spouse in the common property*. According to the civil law, the interest of the deceased in the common property took the same course of succession as his separate property, and this was true in Louisiana until 1920, but in other states, special rules for the descent of the interest of the other in common property are quite generally enacted, and the marked tendency of this legislation is to make the surviving spouse a favored heir of the deceased."

I know of nothing which would prevent the Legislature from making one spouse more favored than another, or, having done so, that the surviving spouse take otherwise than as a statutory heir. The word "heirs" is not necessarily limited to blood kindred. In Dickey v. Walrond (1927) 200 Cal. 335, 253 P. 706, 708, is a definition of "heirs" which seems satisfactory:

"The word 'heirs' * * * means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statutes relative to succession." (Cases cited.) "The 'heirs' of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will." (Citing cases.) "The husband under our law is, of course, an heir of his deceased wife"—citing cases.

If we consider the effect of the wife's death upon the commercial aspect of the husband's affairs, we find that it would be the fact that the descendants of the deceased wife taking her interest in the community property on her death, which would cause the rupture in the husband's business affairs. This result is safeguarded against as well by favoring the surviving husband as an heir, instead of the deceased wife's descendants, and as effectively as by creating a form of estate like joint tenancy or tenancy by the entirety, with the feature of survivorship. The Legislature in section 1840, when dealing with the interest of the wife in community property which had been set apart to her by judicial decree, said that, in the absence of testamentary disposition thereof, it "goes to her descendants, *or heirs, exclusive of her husband.*" Why the expression, "heirs, exclusive of her husband," if he were not considered an heir as to community property?

If the Legislature had in mind to safeguard against the rupture in the husband's business affairs, caused by the wife's death if her lineal heir took her interest on her death, and substituted the husband for such lineal heirs, they had the right to further effectuate such a purpose by withholding the testamentary power from the wife.

"The right to dispose of his property by will has always been considered purely a creature of statute, and within legislative control."

U. S. v. Perkins, 163 U. S. 625, 16 S. Ct. 1073, 1074, 41 L. Ed. 287. Such power is not by our statutes bestowed upon persons under 21 years of age or upon per-

sons of unsound mind. Such persons die owning property, which they could not dispose of by will, and yet they die owning an interest in property and the state may control the intestate succession to such property. By withholding the testamentary power from the wife, the Legislature, having made the husband a favored heir, further barred the opportunity of the wife to disinherit him as to community property. What happens by virtue of the statute is not on that account any less an inheritance.

The Legislature may put limitations upon the power of testamentary disposition so as to protect favored heirs. For instance, in Idaho the husband and wife have power to make testamentary disposition of his or her half of the community property, but "in favor only of his, her or their children or a parent of either spouse, * * * provided that not more than one-half of the decedent's half of the community property may be left by will to a parent or parents." See Idaho Comp. St. 1919, § 7803. It is but a step further and in the same direction to withhold such testamentary power altogether.

The fact that under our statute the interest of the wife in community property passes to her husband upon her death, *without administration,* does not indicate that a new form of estate has been created or that such interest does not pass to the husband by "succession" as that term is generally understood. As we have seen, the inheritance tax officials of Idaho have not thought that the fact that no administration of the estate of a deceased wife is necessary makes the wife's interest in community property any less property as shall "pass by will or by the intestate laws of this state."

If the Legislature did not intend to deal with the wife's interest upon her death as passing by the law of descent and distribution, why was the expression "without administration" used? In other words, it seems plain that the Legislature considered that the interest of the deceased wife was of that character and quality which would pass by the intestate laws with administration applicable thereto unless they dispensed with the administration.

I must therefore register my dissent.

PARKER, J. I concur in this dissent.