1999-NMCA-018

973 P.2d 256

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Ralph RUBIO, Defendant–Appellant.**

**No. 19031.**

Court of Appeals of New Mexico.

Dec. 7, 1998.

Certiorari Denied Jan. 11, 1999.

Tom Udall, Attorney General, Santa Fe, Max W. Shepherd, Assistant Attorney General, Albuquerque, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Defendant appeals his conviction for breaking and entering in violation of NMSA 1978, Section 30–14–8 (1981). He contends the conviction should be reversed because: (1) the jury instruction describing the offense of breaking and entering was improper; (2) the trial court refused to give a jury instruction on a lesser-included offense; and (3) the trial court refused to instruct the jury on his defense theory that he had "permission" to enter the premises because he had an alleged tenancy interest in the apartment. Not persuaded, we affirm.

## FACTS

{2} Defendant and Lori Reynolds had an "on-again, off-again" relationship for about three years before the incident leading to this conviction. They had one child together, and Reynolds had two other children. Sometimes Defendant provided child-care for Reynolds' children while she was at work. Defendant and Reynolds maintained their own apartments. Reynolds testified that Defendant generally stayed the night at her apartment and at other times, she stayed at his apartment. Reynolds testified that Defendant generally did not keep any clothing or furniture at her apartment and she did not keep anything at his apartment. On the date of the incident, Defendant had a television and a pair of shoes at Reynolds' apartment.

{3} On March 31, 1997, Defendant picked up the children from school and took them to Reynolds' apartment while she was at work. He was cooking dinner for them when she returned home. Sometime during the evening, Reynolds received a telephone call from a man she had dated during a period when she and Defendant were not together. Defendant became angry and left the apartment. Reynolds, having seen his rages before, locked the door after him. Defendant returned shortly thereafter and banged on the door asking for his television and shoes. Reynolds refused to let him in. Defendant kicked open the door, breaking the locks and the casing of the door. He entered the apartment but left immediately when Reynolds informed him that she had called the police. Defendant was charged with breaking and entering.

## DISCUSSION

{4} "Breaking and entering consists of the unauthorized entry of any ... dwelling or other structure ... where entry is ob-

tained by ... the breaking or dismantling of any part of the ... dwelling or other structure ...." Section 30–14–8(A). The Uniform Jury Instruction, UJI 14–1410 NMRA 1998, given in this case states:

Instruction No. 3

For you to find the defendant guilty of Breaking and Entering, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant entered the residence of Lori Reynolds without permission;

2. The entry was obtained by the breaking of a door;

3. This happened in New Mexico on or about the 31st day of March, 1997.

Defendant argues that the jury instruction does not properly instruct the jury on the elements of the crime. He argues that "entry without permission" is not the same as "unauthorized entry ."

{5} We note that Defendant did not object to the giving of the uniform jury instruction on breaking and entering. He points out, however, that he did argue his authority to be in the apartment as a defense to the charge. Thus, he contends, he was entitled to a proper instruction, even though he did not object to the instruction given.

■ {6} Defendant is correct that UJI 14–1410 does not track the language of Section 30–14–8(A) exactly. The statute uses the phrase "unauthorized entry," while the instruction uses the phrase "without permission." This variation from the strict language of the statute does not, by itself, make the instruction improper in a general sense or in this case. As our Supreme Court stated in *State v. Maestas,* 63 N.M. 67, 71, 313 P.2d 337, 340 (1957): "It is not imperative that the charge to the jury use the precise terms of the statute. Instructions are sufficient which substantially follow the language of the statute or use equivalent language." This view is reflected in the UJI approach to definitional instructions. *See* UJI 14–130 committee commentary (noting the effort to use words with ordinary meaning when possible).

{7} Thus, while we agree that "permission" and "authorization" are not strictly synonymous, that does not necessarily mean that the jury instruction was improper here. We believe the concept of permission captures most conduct that would contravene the statute, including the fact pattern of this case. There might be cases in which different wording would be appropriate. But that is not the situation we review in this case.

{8} To answer Defendant's contention, we must determine whether there was any disputed issue in this case about Defendant's legal authority to be in the apartment that was not covered by use of the words "without permission" in the jury instruction. An unauthorized entry suggests an entry "without legal right or privilege or without permission of a person legally entitled to withhold the right." *Hambrick v. State,* 174 Ga.App. 444, 330 S.E.2d 383, 385 (1985); *cf. State v. Ruiz,* 94 N.M. 771, 779, 617 P.2d 160, 168 (Ct.App. 1980) ("An unlawful entry is an entry not authorized by law, without excuse or justification."). Here, Defendant argues that he had legal authority to enter Reynolds' apartment because he shared the apartment with her.

■ {9} We disagree. Because the pertinent facts here are undisputed, whether Defendant had legal authority over the premises is a question of law. *See Quantum Corp. v. State, Taxation & Revenue Dep't,* 1998–NMCA–050, ¶ 8, 125 N.M. 49, 956 P.2d 848. The evidence shows that Reynolds rented the apartment. She lived there with her three children. She furnished the apartment and her belongings were in it. Defendant was a frequent visitor to the apartment. Although he often stayed the night, he generally did not keep any belongings in the apartment. Defendant did not pay any part of the rent on Reynolds' apartment. There was no evidence that he had a key for the apartment or that he could be at the apartment any time he wanted. We do not believe this evidence is sufficient to establish any sort of enforceable possessory interest on the part of Defendant in Reynolds' apartment. In particular, there is no evidence to support a claim that he had a lawful right to enter the apartment over the objection of Reyn-

olds. The testimony below evidences nothing more than that Defendant was a frequent visitor at Reynolds' apartment and that he was there with Reynolds' permission. In sum, we believe that the evidence overwhelmingly supports the conclusion that Defendant did not have blanket authority to enter the apartment, or that whatever authority he may have had was freely revocable by Reynolds.

{10} We find support for our position when we compare the situation in this case with the situations presented in cases from other jurisdictions, especially those examining whether one spouse may enter the dwelling of the other spouse absent permission. For example, in *People v. Johnson*, 906 P.2d 122 (Colo.1995) (en banc), the Colorado Supreme Court held that husband could be convicted of burglary and criminal trespass for breaking into his estranged wife's apartment. In so holding, the court rejected husband's arguments that, by virtue of the couple's marital status, he was either licensed to enter the apartment or had an ownership interest in the apartment. The court reasoned that having an arguable ownership interest in property does not necessarily mean that a person has a possessory interest (even in a community property state like Colorado). As the court stated: "The law of burglary was designed to protect the dweller and hence the controlling question is occupancy rather than ownership. The fact that the property burglarized was in community ownership does not by law preclude a burglary conviction of one of the owners." *Id.* at 125–26 (citations omitted).

{11} Similarly, in *Parham v. State*, 79 Md.App. 152, 556 A.2d 280 (1989), where husband and wife had an on-again, off-again relationship that was "off" at the time husband broke into wife's home, the Maryland Court of Special Appeals rejected husband's argument that the home was not that "of another," as the Maryland burglary statute requires, *see* Md. Ann.Code art. 27, § 29 (1996), because wife was in possession of the home at the time of the break in. *See Parham*, 556 A.2d at 284. Neither was the court persuaded by the fact that husband may have had an interest in the property by virtue of

his marriage, nor that he may have had some personal property in the house. "The law of burglary was designed for the purpose of protecting the habitation, and thus, occupancy or possession, rather than ownership, is the test." *Id.* at 284 (citations omitted).

{12} The foregoing cases are illustrative of the overwhelming weight of authority from other jurisdictions. *See, e.g., Cladd v. State*, 398 So.2d 442, 444 (Fla.1981) (rejecting argument that right of marital consortium implies consent to enter wife's dwelling, saying, "[s]ince burglary is an invasion of the possessory property rights of another, where premises are in the sole possession of the wife, the husband can be guilty of burglary if he makes a nonconsensual entry into her premises with intent to commit an offense"); *State v. Dively*, 431 N.E.2d 540, 543 (Ind.Ct.App. 1982) (holding wife could be guilty of burglary for breaking into husband's separately owned tavern); *Matthews v. Commonwealth*, 709 S.W.2d 414, 419–20 (Ky.1985) (holding that defendant was not entitled to a directed verdict on a charge of burglarizing his estranged wife's home, even though he formerly shared the residence with her); *State v. Woods*, 526 So.2d 443, 445–46 (La.Ct.App. 1988) (holding that the use of community assets to pay rental obligation did not make property community dwelling where evidence indicated that wife rented the apartment "for the sole use of herself and her children"); *People v. Szpara*, 196 Mich.App. 270, 492 N.W.2d 804, 806 (1992) (affirming defendant's conviction for breaking and entering own home because court order that defendant not enter the home temporarily stripped him of his possessory rights in the home); *State v. Cox*, 73 N.C.App. 432, 326 S.E.2d 100, 103 (1985) (holding husband could be guilty of burglary, even though husband and wife formerly shared the home, where evidence tended to show that wife paid rent and utilities solely, and refused husband entry on the night in question).

{13} We recognize that in many of the preceding cases the defendants were accused of burglary and not breaking and entering, as in the instant case. However, we have no difficulty drawing on case law grounded in the common law of burglary as we think it

clear that New Mexico's breaking-and-entering statute is itself grounded in common law burglary. *See* UJI 14–1410 NMRA 1998 committee commentary ("New Mexico's breaking and entering statute is a type of statutory burglary.").

{14} We also recognize that the statutes at issue in many of the cases require (again drawing on the common law) that the breaking and entering be of the dwelling "of another," while the New Mexico statute proscribes "unauthorized entry," *see* section 30–14–8(A). But as the Indiana Court of Appeals aptly stated: "The Burglary statute's requirement that the dwelling be that 'of another person' is satisfied if the evidence demonstrates that the entry was unauthorized." *Jewell v. State,* 672 N.E.2d 417, 426 (Ind.Ct.App.1996).

{15} Finally, we note that New Mexico case law construing our burglary statute has already recognized some of the principles we put forth above. In *State v. Sanchez,* 105 N.M. 619, 620, 735 P.2d 536, 537 (Ct.App.1987), this Court indicated, while noting differences between our burglary statute and common law burglary, that "the statutory offense of burglary is one against the security of property, and its purpose is to protect possessory rights." We take this opportunity to state that we believe that the purpose of New Mexico's breaking-and-entering statute is likewise to protect possessory rights.

{16} Thus, we hold that the trial court's failure to instruct the jury on an "unauthorized entry" rather than an "entry without permission" is not reversible error under the facts of this case. We specifically decline to discuss what facts are necessary to establish authority to enter a dwelling, as we believe that will vary on a case-by-case basis.

{17} Defendant also argues that the trial court erred in refusing to give his lesser-included offense instruction on criminal damage to property. We assume that under appropriate fact patterns, criminal damage to property could be a lesser-included offense of breaking and entering. *Cf. State v. Romero,* 1998–NMCA–057, ¶ 16, 125 N.M. 161, 958 P.2d 119. An unauthorized entry is the distinguishing element of the two crimes. As we determined above, there is no question that Defendant's entry was unauthorized. Because no reasonable view of the evidence establishes that criminal damage to property was the highest degree of crime committed, there was no error in refusing the instruction. *See State v. Diaz,* 121 N.M. 28, 30, 908 P.2d 258, 260 (Ct.App.1995) (indicating that the failure to instruct on a lesser-included offense is not reversible error if there is no evidence that the lesser-included offense is the highest degree of crime committed).

{18} Finally, Defendant argues that the trial court erred in refusing his tendered instructions regarding his claim that he was a tenant-at-will and, thus, had authority to enter the property. Of course a defendant is entitled to instructions on his theory of defense if there is evidence to support them. *See State v. Castrillo,* 112 N.M. 766, 769, 819 P.2d 1324, 1327 (1991). As we pointed out above, however, there is no evidence to support Defendant's contention that Defendant had authority to enter the property. The evidence established nothing more than that he was a frequent guest in Reynolds' apartment and that his only legal authority to be in her apartment was her permission. Therefore, the evidence did not support the giving of Defendant's instructions.

## CONCLUSION

{19} Having reviewed the undisputed evidence, we find, as a matter of law, that Defendant had no authority to enter Reynolds' apartment. Thus, the trial court did not err in refusing to give Defendant's requested instructions. Further, the failure to instruct the jury that it had to find an unauthorized entry was not reversible error as there was no issue presented regarding Defendant's authority. Defendant's conviction for breaking and entering is affirmed.

{20} **IT IS SO ORDERED.**

HARTZ, C.J., and PICKARD, J., concur.