**Certiorari Denied, January 29, 2013, No. 33,968**
**Certiorari Granted, February 8, 2013, No. 33,970**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-025**

**Filing Date: November 28, 2012**

**Docket No. 30,379**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellant/Cross-Appellee,**

**v.**

**GERARD B. PARVILUS,**

      **Defendant-Appellee/Cross-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Cross-Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Cross-Appellant

**OPINION**

**FRY, Judge.**

**{1}** Defendant was convicted of second degree murder, kidnapping (one count of first degree and one count of second degree), aggravated burglary, aggravated assault, and interference with communications. Defendant entered his estranged wife's apartment without permission, kidnapped his wife's paramour, and killed the paramour. Later,

Defendant also kidnapped and assaulted his wife. On Defendant's motion for judgment of acquittal notwithstanding the verdict, the district court vacated the conviction for aggravated burglary on the basis of a statute providing that "[n]either husband nor wife . . . can be excluded from the other's dwelling." NMSA 1978, § 40-3-3 (1907). The State appeals from this ruling, and Defendant cross-appeals, asserting several errors related to jury instructions, sufficiency of the evidence, denial of a motion for mistrial, and the alleged unconstitutional vagueness of our kidnapping statute. We affirm.

**BACKGROUND**

{2}     In March 2007, Defendant was a non-commissioned officer in the Air Force, stationed in Korea. Defendant's wife (Wife) was also in the Air Force and volunteered for a temporary deployment in Kuwait, where she began an affair with Victim, a military police officer. Wife ultimately admitted the affair to Defendant but told him that she was not going to continue the relationship with Victim. Over a period of several months in late 2007 and early 2008, Defendant and Wife discussed the possibility of getting divorced.

{3}     Wife returned to Alamogordo, New Mexico, in January 2008. Victim joined her there, and they resumed their affair. In February 2008, Wife revealed to Defendant that she had become pregnant with Victim's child and that she had an abortion. A few days later, Defendant went AWOL, flew from Korea to El Paso, Texas, and drove to Alamogordo, where he checked into a motel.

{4}     The following day, Defendant bought a screwdriver and a box cutter to use in breaking into Wife's apartment, and he also purchased a handgun.[1] Defendant drove to Wife's apartment and, leaving the handgun in the car, he crawled in through an open window, whereupon he discovered Victim in the bathroom. Defendant retrieved a handgun from a closet and confronted Victim. Defendant then bound Victim with duct tape and proceeded to interrogate Victim. Following this conversation, Defendant cut the duct tape from Victim.

{5}     Victim and Defendant drove to the motel where Defendant was staying and went to Defendant's room. According to Defendant's testimony, Victim insisted on accompanying him to the motel because he believed that Wife had lied to both Victim and Defendant. Also according to Defendant, after the two men entered the motel room, Defendant placed the guns and the knife on one of the beds and began to talk to Victim, whereupon Victim grabbed one of the guns and pointed it at Defendant. Defendant testified that he feared he was about to be shot, so he stabbed Victim to death.

---

[1]Apparently the lease on the apartment was originally in the names of both Wife and Defendant, but at some point prior to Defendant's going AWOL, the apartment's lessor, Wife, and Defendant agreed that Defendant would be released from any obligations under the lease.

**{6}**     Defendant then returned to Wife's apartment. Wife testified that when she arrived at the apartment, Defendant accosted her and struck her in the head with a handgun, forced her to drive to the motel, and showed her Victim's body in the motel room. According to Defendant, he accidentally hit Wife in the head with the gun and she voluntarily accompanied him to the motel. Soon after, Defendant drove with Wife to the office of the New Mexico State Police and turned himself in.

**{7}**     Following a trial, the jury found Defendant guilty of second degree murder, two counts of kidnapping, aggravated burglary, aggravated assault, and interference with communications. Defendant moved for a judgment of acquittal notwithstanding the verdict, arguing in part that his entry into Wife's apartment was not unauthorized, as required by the burglary statute, because Section 40-3-3 provides that neither spouse can exclude the other from the spouse's dwelling. The district court agreed and vacated Defendant's conviction for aggravated burglary. The State appeals from this determination, and Defendant cross-appeals, raising several other issues.

## DISCUSSION

### 1.     The State's Appeal

**{8}**     The State argues that the district court improperly vacated Defendant's conviction for aggravated burglary. In order to find Defendant guilty of aggravated burglary, the jury had to find, among other elements, that Defendant's entry into Wife's apartment was unauthorized. *See* NMSA 1978, § 30-16-4 (1963) (stating that "[a]ggravated burglary consists of the unauthorized entry of any . . . dwelling" when the person is either armed with a deadly weapon, arms himself with a deadly weapon once inside, or commits a battery on a person in the place entered). The district court determined that Defendant's entry into Wife's apartment was not unauthorized in light of Section 40-3-3, titled "Separation of property; admission to dwelling of spouse[,]" which states: "Neither husband nor wife has any interest in the property of the other, but neither can be excluded from the other's dwelling."

**{9}**     "Statutory interpretation is an issue of law, which we review de novo." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We do this by giving effect to the plain meaning of the words of [a] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801.

**{10}**    We have no case law explaining the Legislature's intent in 1907 when it enacted Section 40-3-3, but the State surmises that it was an aspect of the married women's property statutes that were enacted in most states in the late nineteenth and early twentieth centuries as "part of a national campaign to sweep away the common law web of limitations and disabilities which had entangled a married woman's rights to own and dispose of property."

3

*See* Jane M. Keenan, Comment, *The End of an Era: A Review of the Changing Law of Spousal Burglary*, 39 Duq. L. Rev. 567, 570 (2001) (internal quotation marks and citation omitted). This supposition is bolstered by the fact that at the same time it enacted Section 40-3-3, our Legislature enacted several other statutes addressing the issue of married women's property rights. *See, e.g.*, NMSA 1978, § 40-2-1 (1907) (stating that "[h]usband and wife contract toward each other obligations of mutual respect, fidelity and support"); NMSA 1978, § 40-2-2 (1907) (explaining contract rights of husband and wife); NMSA 1978, §§ 40-2-4 to -7 (1907, as amended through 1973) (explaining execution and recording of marriage settlement and separation contracts); NMSA 1978, §§ 40-2-8 to -9 (1907) (describing the extent to which husband and wife can contract to alter their legal relationship and consideration for such a contract); NMSA 1978, § 40-3-1 (1907) (stating that "[t]he property rights of husband and wife are governed by this chapter"); NMSA 1978, § 40-3-2 (1907) (stating how husband and wife may hold property).

**{11}** If the State is correct in theorizing that Section 40-3-3 was enacted as part of broader legislation addressing the property rights of married women, this theory does not aid us much in determining whether the statute has the effect of limiting the reach of our criminal burglary statutes when the burglar and the burglary victim are married to each other. If we focus on the statute's language, it appears that its reach is fairly broad. First, the statute does not appear to contemplate preservation of *one* "marital home" from which neither spouse can be excluded. Instead, the statute states that neither husband nor wife "can be excluded from *the other's dwelling*." *Id.* (emphasis added). This language suggests that, even if husband and wife maintain separate residences, neither can exclude the other spouse. Second, there are no limitations of any kind placed on this blanket prohibition against exclusion. As a result, estrangement of the spouses or the many forms of having possession of a residence appear to have no impact on the prohibition.

**{12}** Through the lens of this sweeping prohibition against spousal exclusion, we consider the burglary statutes and our courts' interpretation of those statutes. Our Supreme Court recently discussed at length the history and purpose of our existing burglary statutes in *State v. Office of the Public Defender, ex rel. Muqqddin*, 2012-NMSC-029, 285 P.3d 622. The Court noted that New Mexico case law has stated that "the purpose of our burglary statute is to protect possessory rights with respect to structures and conveyances, and to define prohibited space." *Id.* ¶ 40 (internal quotation marks and citations omitted). The Court stated that "[c]hief among the possessory interests that burglary is designed to protect is the right *to exclude*." *Id.* ¶ 41 (emphasis added). The Court went on to state that "[t]his right to exclude has been described as perhaps the most fundamental of all property interests." *Id.* (internal quotation marks and citation omitted).

**{13}** The Court's focus on the right to exclude dovetails with Section 40-3-3 insofar as Section 40-3-3 appears to eliminate either spouse's right to exclude the other spouse from the first spouse's dwelling. Therefore, the plain language of Section 40-3-3 appears to render inter-spousal burglary an impossibility. Applied to the facts in this case, Section 40-3-3 prohibited Wife from excluding Defendant from her apartment and, consequently, his

entry into her apartment, even with felonious purpose, did not constitute burglary as a matter of law. It was a legal impossibility for his entry to be deemed "unauthorized" as required by our burglary statutes.

**{14}** The State argues against this conclusion and relies for support on a New Mexico case and several cases from other jurisdictions. None of these cases persuade us that our reading of Section 40-3-3 is wrong.

**{15}** The State first relies on *State v. Rubio*, which involved a defendant charged with breaking and entering his girlfriend's apartment. 1999-NMCA-018, ¶¶ 1-2, 126 N.M. 579, 973 P.2d 256. The defendant argued that he had the authority to be in his girlfriend's apartment and, therefore, that he did not commit an "unauthorized entry" as required by the statute criminalizing breaking and entering. *Id.* ¶¶ 5-6 (internal quotation marks omitted). He further argued that the instruction given to the jury erroneously stated that an element of the crime was "entry without permission" rather than the statutory language of "unauthorized entry." *Id.* ¶¶ 4-5 (internal quotation marks omitted). This Court concluded that because the defendant and his girlfriend maintained separate apartments, the defendant paid no rent on the girlfriend's apartment, and there was no evidence that the defendant had a key to the girlfriend's apartment, he did not have "blanket authority to enter the apartment," and any authority he may have had "was freely revocable" by the girlfriend. *Id.* ¶¶ 2, 9. Consequently, the district court's failure to instruct the jury on "unauthorized entry" was not reversible error. *Id.* ¶ 16 (internal quotation marks omitted).

**{16}** The State argues that the present case is similar to *Rubio* in that both the burglary statutes and the breaking and entering statute seek to protect possessory interests rather than ownership interests. As a result, even if Section 40-3-3 protects some sort of property interest Defendant might have had in Wife's apartment, the State argues, Wife's possessory interest in the apartment was distinct and was protected by the burglary statutes. The State bolsters its argument by noting that the apartment's lessor, Wife, and Defendant agreed to release Defendant from the lease's obligations sometime before the events surrounding Victim's murder.

**{17}** We are not persuaded that *Rubio* is relevant to this case. The defendant and the victim in *Rubio* were not married, so Section 40-3-3 had no impact on this Court's analysis. Section 40-3-3 injects into the case before us a factor not present in *Rubio*, which is the statutory prohibition against one spouse excluding the other from a spousal dwelling. Further, Section 40-3-3 makes no distinction between title to and possession of a spousal dwelling, which is the distinction *Rubio* relied on. For the same reasons, we are not persuaded by the Colorado case on which the State relies. *See People v. Johnson*, 906 P.2d 122, 124, 126 (Colo. 1995) (en banc) (reversing the dismissal of burglary and trespass charges against the defendant who had entered his estranged wife's separately leased apartment, but not involving a non-exclusion statute such as Section 40-3-3).

**{18}** The State more appropriately relies on a case from Ohio and one from California,

5

both of which are states that currently have or once had statutory provisions similar to Section 40-3-3. In *State v. Lilly*, the Ohio Supreme Court addressed the impact of a non-exclusion statute on the prosecution of one spouse for the burglary of the other spouse's residence. 717 N.E.2d 322, 325 (Ohio 1999). The Ohio statute, like New Mexico's Section 40-3-3, provides that "[n]either husband nor wife has any interest in the property of the other" and that "[n]either can be excluded from the other's dwelling." Ohio Rev. Code Ann. § 3103.04 (1953). The only difference is that the Ohio statute provides an exception to the exclusion prohibition when a spouse has obtained a court order allowing exclusion. *Id.* The court in *Lilly* concluded that the statute did not preclude burglary by one spouse of the other spouse's residence for two primary reasons. First, the non-exclusion statute was in a domestic relations chapter of the Ohio code, and the Court determined that the statute "was intended to address property ownership rights of married persons, matters of a civil nature," and "not meant to be enforced criminally." 717 N.E.2d at 326. Second, "the purpose of [the] burglary law is to protect the dweller" such that "custody and control, rather than legal title, is dispositive." *Id.* at 327. Because the defendant had no right of custody or control over his estranged wife's separately leased residence, the jury could reasonably find that the defendant trespassed in the wife's apartment, where trespass was an element of the crime of burglary. *Id.* at 325, 327-28.

**{19}** The California case relied on by the State focused on the alleged burglar's intent in entering the residence in question. *See People v. Sears*, 44 Cal. Rptr. 330, 336 (1965), *overruled on other grounds by People v. Cahill*, 20 Cal. Rptr. 2d 582 (1993) (in bank). In *Sears*, the California Supreme Court cited the non-exclusion statute, which has since been repealed, *see* West's Ann. Cal. Civ. Code § 5102 (1994), but did not discuss it. *Sears*, 44 Cal. Rptr. at 336. The court in *Sears* stated simply that "[o]ne who enters a room or building with the intent to commit a felony is guilty of burglary even though permission to enter has been extended to him personally or as a member of the public. The entry need not constitute a trespass." *Id.* (citation omitted). Because the defendant in *Sears* had the intent to commit an assault when he entered what had been his home before he separated from his wife, the court had no difficulty rejecting the defendant's contrary argument. *Id.*

**{20}** Although the State does not cite a later California case, *People v. Davenport*, 268 Cal. Rptr. 501 (Ct. App. 1990), it is instructive because, unlike the California Supreme Court in *Sears*, the California Court of Appeal actually addressed California's non-exclusion statute. That statute, like New Mexico's Section 40-3-3, provided, "[N]either husband nor wife has any interest in the separate property of the other, but neither can be excluded from the other's dwelling." Cal. Civ. Code § 5102; *see Davenport*, 268 Cal. Rptr. at 503. The court in *Davenport* rejected the defendant's argument that the non-exclusion statute precluded his conviction for burglarizing the residence in which his estranged wife was living. *Id.* at 502, 505. In doing so, the court relied on case law interpreting the non-exclusion statute as relating to "the marital right of the spouses to occupy the family home" and on the holding in *Sears*. *Davenport*, 268 Cal. Rptr. at 503-04 (internal quotation marks and citation omitted). Thus, to the extent the defendant in *Davenport* had any right of entry under the non-exclusion statute, it was "qualified to a lawful purpose." *Id.* at 505.

6

**{21}** Although the results in these cases from Ohio and California seem "correct" in the moral sense, we are not persuaded by their rationale. With respect to the Ohio Supreme Court's rationale in *Lilly*, we see nothing in Section 40-3-3 indicating that it applies only in the civil context, nor has the State cited any authority stating that civil statutes cannot circumscribe criminal statutes. And, as we have already mentioned, our burglary statutes' purpose in protecting possessory rights rather than ownership rights leads us squarely into the wall created by the exclusion proscription of Section 40-3-3. Our burglary statutes protect the possessory right to exclude, and Section 40-3-3 dictates that spouses have no such right. *See Office of the Pub. Defender*, 2012-NMSC-029, ¶ 41 (explaining that "[c]hief among the possessory interests that burglary is designed to protect is the right to exclude"). As for the California cases, according to the court in *Sears*, unauthorized entry is not even an element of burglary in California as it is in New Mexico. The *Sears* court stated that even a person entering a building *with permission* can be guilty of burglary if that person has the intent to commit a felony. *Sears*, 44 Cal. Rptr. at 336. As a result, we cannot square the California cases' reasoning with our burglary statutes' requirement of unauthorized entry, particularly where the effect of our non-exclusion statute is to immunize an otherwise unauthorized entry.

**{22}** More importantly, the Ohio and California courts, as a matter of policy, appear to have simply brushed aside the non-exclusion statutes. In our view, it is not our role to dictate what constitutes sound public policy because that is a matter best left to the Legislature. *See Torres v. State*, 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) (explaining that "it is the particular domain of the [L]egislature, as the voice of the people, to make public policy" and that "[c]ourts should make policy . . . only when the body politic has not spoken"). If the Legislature wants to limit the reach of Section 40-3-3, it can amend or repeal it.

**{23}** We appreciate the policy concerns underlying the courts' decisions in *Lilly* and *Davenport*—concerns that may well motivate our Legislature to clarify the impact it intends Section 40-3-3 to have on the crime of burglary. Inter-spousal burglary commonly leads to domestic violence. *See, e.g.*, *State v. O'Neal*, 721 N.E.2d 73, 77-78 (Ohio 2000) (describing a defendant breaking into estranged wife's separately leased residence and then shooting his wife and injuring his son); *Sears*, 44 Cal. Rptr. at 333 (describing husband entering estranged wife's residence, injuring wife, and killing wife's daughter); *see also* 39 Duq. L. Rev. 567 (describing numerous cases of inter-spousal burglary culminating in domestic violence). Some may be troubled that because of Section 40-3-3, the mere fact of marriage provides immunity to someone who burglarizes the residence of an estranged spouse. However, it is for the Legislature to determine whether to amend the statute to eliminate this immunity.

## 2.     Defendant's Cross-Appeal

**{24}** In his cross-appeal, Defendant makes five arguments for reversal of his convictions: (1) the district court erroneously refused to give Defendant's requested instruction on the

definition of sufficient provocation in connection with the crime of voluntary manslaughter, (2) there was insufficient evidence supporting Defendant's conviction for first degree kidnapping, (3) the kidnapping statute is unconstitutionally vague and therefore void, (4) the district court's failure to provide the jury with use instructions for the special verdict forms constitutes fundamental error, and (5) the district court should have granted Defendant a mistrial when jurors saw him arrive at court in a sheriff's vehicle.

## a.      Instruction on Sufficient Provocation

**{25}**     The district court instructed the jury on the elements of voluntary manslaughter, including the explanation that "[t]he difference between second degree murder and voluntary manslaughter is sufficient provocation."   Defendant tendered an instruction defining sufficient provocation according to UJI 14-222 NMRA, which states:

> "Sufficient provocation" can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition.  The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

Defendant's tendered instruction added the following language, which is not part of UJI 14-222:  "A series of events over a considerable period of time may constitute sufficient provocation."  As authority supporting this addition, Defendant cited *State v. Benavidez*, 94 N.M. 706, 616 P.2d 419 (1980).  The district court refused Defendant's requested instruction and instead instructed the jury according to UJI 14-222.  Defendant argues that the district court's refusal of his tendered instruction was reversible error.  He maintains that the additional language, supported by *Benavidez*, would have explained to the jury that events over a period of time could constitute provocation and that without this language, the jury was allowed to speculate.

**{26}**     Because Defendant preserved this issue by tendering the desired instruction, we review for reversible error.  *State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705.  "Reversible error arises if . . . a reasonable juror would have been confused or misdirected."  *Id.* ¶ 22 (alteration in original) (internal quotation marks and citation omitted). Juror confusion or misdirection may arise from an instruction "which, through omission or misstatement, fail[s] to provide the juror with an accurate rendition of the relevant law."  *Id.* (internal quotation marks and citation omitted).

**{27}**     We are not persuaded that *Benavidez* supports the additional instruction language sought by Defendant.  In *Benavidez*, our Supreme Court concluded that there was enough evidence of sufficient provocation to support an instruction on voluntary manslaughter.  94 N.M. at 708, 616 P.2d at 421.  The Court cited evidence of the victim's conduct, which apparently occurred long before the defendant killed the victim, that constituted evidence

8

of sufficient provocation. *Id.* However, there is nothing in the case suggesting that anything other than the UJI instruction was requested or necessary.

**{28}** We do not read the holding in *Benavidez* as a requirement to instruct a jury that events over a period of time can constitute sufficient provocation. Furthermore, the instruction given in this case did not rule out the notion that sufficient provocation could arise from events occurring over a period of time. In addition, our Supreme Court has not seen fit to change UJI 14-222 in the thirty-two years since *Benavidez* was decided. We therefore fail to see how the instruction given could have confused or misled the jury. *See* UJI Crim. General Use Note NMRA (stating that "when a uniform instruction is provided for the elements of . . . a defense . . . , the uniform instruction must be used without substantive modification or substitution").

**b.      Sufficiency of Evidence Supporting Kidnapping Conviction**

**{29}** In order to convict Defendant of first degree kidnapping, the jury had to find beyond a reasonable doubt:

> 1.      [D]efendant took, restrained, confined, or transported [Victim] by force, intimidation or deception;
>
> 2.      [D]efendant intended to hold [Victim] against [Victim's] will: to inflict death or . . . physical injury on [Victim]
>
>         OR
>
>         for the purpose of making [V]ictim do something or for the purpose of keeping [V]ictim from doing something;
>
> 3.      [D]efendant was not suffering from a mental disease or disorder at the time the offense was committed to the extent of being incapable of forming the intention to hold [Victim] to inflict death or physical injury or for the purpose of making [V]ictim do something or for the purpose of keeping [V]ictim from doing something.
>
> 4.      This happened in New Mexico on or about the 22nd day of February, 2008.

The jury could have reduced the conviction to second degree kidnapping by finding that Defendant "voluntarily free[d V]ictim in a safe place and [did] not inflict physical injury or a sexual offense upon [V]ictim." NMSA 1978, § 30-4-1(B) (2003). However, the jury answered special verdict questions and unanimously found against Defendant on the elements of freeing Victim in a safe place without physical injury. The commission of a sexual offense was not at issue.

**{30}** Defendant argues that there was insufficient evidence that he failed to free Victim in a safe place because he released Victim from the duct tape at Wife's apartment and there was no evidence that Victim was injured by the restraint up to that point. Defendant further argues that there was no indication that he restrained Victim in any way after that. He notes that security camera photos at the motel show Defendant entering his motel room ahead of Victim.

**{31}** In reviewing for sufficiency of the evidence, we consider whether substantial evidence exists to support a verdict of guilty beyond a reasonable doubt with respect to every element of the crime charged. *State v. Godoy*, 2012-NMCA-084, ¶ 16, 284 P.3d 410. "We review the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict." *Id.* (internal quotation marks and citation omitted).

**{32}** Although Defendant testified that he freed Victim from the duct tape because he no longer had a "problem" with him, that Victim insisted on driving Defendant to the motel, and that Defendant did not force Victim to go to the motel, the jury was free to reject this testimony. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

**{33}** There was other substantial evidence supporting the conviction for kidnapping. Defendant was armed with a knife and two guns when he and Victim left Wife's apartment, the surveillance photos show Defendant with his hands in his pockets when he and Victim entered the motel room, and Victim left his watch and his wallet at the apartment. From this evidence, the jury could reasonably infer that Victim did not leave the apartment and accompany Defendant to the motel willingly because he feared that Defendant might use one of the handguns if he tried to escape. This inference was buttressed by Wife's testimony that Defendant was armed with the same guns when he later forced her to accompany him to the motel and that she did not try to escape from Defendant when they subsequently drove to the police station because she was afraid Defendant would shoot her.

### c.     Alleged Vagueness of the Kidnapping Statute

**{34}** Defendant argues that the kidnapping statute as amended in 2003 is unconstitutionally vague and therefore should be deemed void. Specifically, Defendant claims that the 2003 amendment, which replaced "great bodily harm" with "physical injury," turned all kidnappings and false imprisonments into first degree kidnapping because "physical injury" is not defined. The current form of the statute provides:

> A.     Kidnapping is the unlawful taking, restraining, transporting or confining of a person by force, intimidation or deception, with intent:
>
> (1) that the victim be held for ransom;

10

(2) that the victim be held as a hostage or shield and confined against his will;

(3) that the victim be held to service against the victim's will; or

(4) to inflict death, physical injury or a sexual offense on the victim.

B.      Whoever commits kidnapping is guilty of a first degree felony, except that he is guilty of a second degree felony when he voluntarily frees the victim in a safe place and does not inflict physical injury or a sexual offense upon the victim.

Section 30-4-1. The 2003 amendment substituted "physical injury or a sexual offense" for "great bodily harm" in Subsection B.

**{35}** We review void-for-vagueness claims under a de novo standard. *State v. Greenwood*, 2012-NMCA-017, ¶ 39, 271 P.3d 753, *cert. denied*, 2012-NMCERT-001, __ P.3d __. "A strong presumption of constitutionality underlies each legislative enactment, and the party challenging constitutionality has the burden of proving a statute is unconstitutional beyond all reasonable doubt." *Id.* (internal quotation marks and citation omitted). To determine whether a statute is unconstitutionally vague, we consider: "(1) whether the statute gives fair notice to persons of ordinary intelligence as to the conduct it prohibits, and (2) whether the statute sets standards and guidelines sufficient to avoid arbitrary and discriminatory enforcement." *Id.* ¶ 40.

**{36}** As an aside, we note that Defendant mentions equal protection and strict scrutiny in his brief, but he does not explain or flesh out any contention that the kidnapping statute violates equal protection. We therefore decline to consider such an argument, to the extent that Defendant has attempted to make one. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. (explaining that the appellate court "will not review unclear arguments, or guess at what [a party's] arguments might be").

**{37}** As for his void-for-vagueness argument, Defendant does not provide any explanation for why he thinks the term "physical injury" fails to provide notice to an ordinary person as to what conduct is being prohibited. Instead, he simply asserts in conclusory fashion that the term allows law enforcement, prosecutors, and fact finders "to engage in arbitrary and discriminatory enforcement of the statute." *State v. Laguna*, 1999-NMCA-152, ¶ 26, 128 N.M. 345, 992 P.2d 896 (stating the standard for assessing whether a statute is unconstitutionally vague).

**{38}** We fail to see how a person of ordinary intelligence would not understand what "physical injury" means. A rational juror would understand that the law intends a greater

11

punishment for a kidnapper who fails to release his or her victim in a safe place without inflicting physical injury. We have already concluded that substantial evidence supported the jury's view that Defendant failed to release Victim without physical injury; Victim's death caused by Defendant clearly falls within the definition of "physical injury." *See id.* ¶ 24 (stating that an appellate court reviews a void-for-vagueness challenge "in light of the facts of the case and the conduct which is prohibited by the statute" (internal quotation marks and citation omitted)). The statute is not unconstitutionally vague.

### d.      Failure to Provide Jury With Instructions for Special Verdict Forms

**{39}**      Because there was an issue as to whether Defendant voluntarily released Victim in a safe place without inflicting physical injury, the district court provided the jury with special verdict forms asking the following:

> Do you unanimously find beyond a reasonable doubt that [D]efendant did not voluntarily free [Victim] in a safe place?
>
> _____ (Yes or No)
>
> _____
> Foreperson
>
> Do you unanimously find beyond a reasonable doubt that [D]efendant inflicted physical injury upon [Victim]?
>
> _____ (Yes or No)
>
> _____
> Foreperson

These questions were consistent with UJI 14-6018 NMRA, and the jury answered each question in the affirmative.

**{40}**      However, the district court failed to provide the jury with the use instructions that, according to UJI 14-6018, precede the special verdict questions. The State tendered the preliminary instructions, but apparently due to an oversight, the instructions never made it into the jury's packet. Those instructions tell the jury that if it finds the defendant guilty of kidnapping, then it must determine whether the defendant voluntarily freed the victim, whether the defendant inflicted physical injury on the victim, or, in appropriate circumstances, whether the defendant committed a sexual offense. The instructions also tell the jury that in order to answer "yes" to any question, the state must prove the factors beyond a reasonable doubt. *Id.*

**{41}**      At trial, Defendant did not object to the district court's failure to provide the jury

12

with these instructions. Therefore, he argues that the court's failure constituted fundamental error requiring reversal of his kidnapping convictions. *See* Rule 12-216(B)(2) NMRA (stating that despite a lack of preservation, the reviewing court can consider, among other matters, fundamental error or fundamental rights of a party).

**{42}** Fundamental error occurs only in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633. When the alleged error involves jury instructions, we first consider "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* ¶ 19. We consider the claim of error "in the context of jury instructions as a whole." *State v. Reed*, 2005-NMSC-031, ¶ 55, 138 N.M. 365, 120 P.3d 447.

**{43}** Defendant's perfunctory argument is that the failure to include the preliminary instructions meant that "the jury had no basis to understand what purpose[] [the special verdict forms] served." We are not persuaded that the absence of the preliminary instructions resulted in the jury's confusion regarding the special verdict forms. The prosecutor discussed the special verdict forms in her closing argument and explained that in connection with kidnapping, the jury would have to decide whether Defendant voluntarily freed Victim and Wife. The questions on the special verdict forms were self-explanatory. In addition, the jury understood the forms well enough to distinguish between the alleged kidnappings of Victim and Wife because the jury answered "no" in response to the question, "Do you unanimously find beyond a reasonable doubt that [D]efendant did not voluntarily [release Wife] in a safe place?" We conclude that the absence of the preliminary instructions to the special verdict forms did not constitute fundamental error.

### e. Propriety of Mistrial

**{44}** Early in the trial, defense counsel moved for a mistrial on the ground that four jurors had seen Defendant arrive at the courthouse seated in the back of a police car. The district court denied the motion, and Defendant asserts that this was error. The district court's ruling on a motion for a mistrial is addressed to the court's sound discretion and will not be disturbed absent a showing of abuse of discretion. *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516.

**{45}** The district court relied on *State v. Holly*, 2009-NMSC-004, 145 N.M. 513, 201 P.3d 844 in denying Defendant's motion. In that case, the defendant failed to preserve the issue but argued on appeal that he was prejudiced when a member of the jury may have seen him in handcuffs. *Id.* ¶ 40. Reviewing the argument for fundamental error, this Court concluded that there was no such error because it was unclear whether the juror actually saw the defendant in handcuffs and whether the exposure was "anything more than inadvertent or insignificant." *Id.* ¶ 42 (internal quotation marks omitted).

**{46}** In this case, as in *Holly*, no evidence was introduced establishing that any jurors

13

actually saw Defendant in the police car and, if they did see Defendant, there is no indication that the exposure was not inadvertent. Although *Holly* was decided under a fundamental error standard, we have additional case law reviewing similar claims under an abuse of discretion standard and holding that inadvertent exposure to a defendant in handcuffs did not prejudice the defendant. *See, e.g.*, *State v. Mills*, 94 N.M. 17, 21-22, 606 P.2d 1111, 1115-16 (Ct. App. 1980) (affirming denial of mistrial motion where the defendant was inadvertently seen by jurors in handcuffs); *State v. Gomez*, 82 N.M. 333, 334, 481 P.2d 412, 413 (Ct. App. 1971) (affirming denial of motions to strike jury panel and for mistrial where jurors saw the defendant in handcuffs before trial and during recess). Moreover, it would certainly be no surprise to jurors that someone accused of murder would be in custody. We fail to see how seeing Defendant in the back of a police car prejudiced him to the extent necessary to warrant a mistrial.

**CONCLUSION**

**{47}**     For the foregoing reasons, we affirm the judgment of the district court.

**{48}     IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**J. MILES HANISEE, Judge**
**Topic Index for *State v. Parvilus*, No. 30,379**

**APPEAL AND ERROR**
Cross Appeal
Fundamental Error
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Vague or Overbroad

**CRIMINAL LAW**
Assault
Breaking and Entering
Burglary

Homicide
Kidnaping
Provocation
Voluntary Manslaughter

**CRIMINAL PROCEDURE**
Mistrial

**DOMESTIC RELATIONS**
Domestic Relations, General

**JURY INSTRUCTIONS**
Criminal Jury Instruction
Failure to Give or Request

**STATUTES**
Interpretation
Legislative Intent
Vagueness