**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2014-NMSC-028

Filing Date: July 31, 2014

Docket No. 33,970

STATE OF NEW MEXICO,

     Plaintiff-Petitioner,

v.

GERARD B. PARVILUS,

     Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**James Waylon Counts, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Petitioner

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Respondent

**OPINION**

**DANIELS, Justice.**

**I.     INTRODUCTION**

**{1}**     Over a century ago, the New Mexico Territorial Legislature enacted a civil marital property statute, now codified as NMSA 1978, Section 40-3-3 (1907), recognizing rights of married women to hold separate property but providing that "neither [husband nor wife] can be excluded from the other's dwelling." In this criminal case based on events that occurred

in 2008, a jury found Defendant Gerard Parvilus guilty of aggravated burglary of his estranged wife's separate dwelling, murder of her boyfriend, first-degree kidnapping of his wife and her boyfriend, aggravated assault of his wife, and interference with communications. The district court granted Defendant's motion for judgment notwithstanding the verdict and vacated the aggravated burglary conviction because of Defendant's claimed unrestricted right under Section 40-3-3 to make an unconsented entry into his wife's separate residence. The Court of Appeals affirmed the district court's ruling, and we granted certiorari. *State v. Parvilus*, 2013-NMCA-025, ¶ 47, 297 P.3d 1228, *cert. granted*, 2013-NMCERT-002.

**{2}**     We hold that Section 40-3-3 does not preclude a conviction for burglary of a spouse's separate dwelling, and we reverse the contrary rulings of both lower courts.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

**{3}**     After a tumultuous two years of marriage marked by violence, infidelity, and bitter fights about divorce and child custody, Defendant and his wife, Jahaira Parvilus, finally decided that Jahaira would move out of their marital home and into a separate apartment with their two-year-old son. Prior to their physical separation, Defendant had threatened to kill himself and became increasingly violent and jealous—slapping Jahaira, breaking a medicine cabinet, and at least once threatening to use a gun.

**{4}**     In January 2008, Defendant rented a separate apartment in Alamogordo for his wife and moved her belongings and some of his own into the apartment while she was out of town. Defendant lived at the apartment briefly and was initially listed as an occupant on the lease. When Jahaira returned to Alamogordo later that month, the couple visited the leasing office together and signed documents establishing that she would be the sole leaseholder of the new apartment. Defendant then turned over his keys to the apartment to his wife and in the first week of February left for South Korea, where he was serving a tour of duty with the Air Force. While Jahaira was driving him to the airport, Defendant punched the dashboard and kicked the windshield until it broke.

**{5}**     Less than a week after Defendant left for South Korea, Jahaira's lover, Pierre Smith, began staying with her in the apartment. On February 17, Jahaira called Defendant and disclosed that she had been pregnant with Smith's child and recently got an abortion. Though Defendant already knew of Smith and had previously sent an e-mail message to Jahaira that he wanted to kill Smith, he grew increasingly despondent about the abortion and the affair. On February 20, Defendant went absent without leave from his base in South Korea and flew home without telling his wife.

**{6}**     After arriving in Alamogordo, Defendant rented a motel room and called his wife after midnight to find out when she would be working the next day. The following morning, Defendant bought a gun, a utility knife, and a screwdriver, later testifying that he intended to break into his wife's apartment while she was at work, obtain some of his legal

documents, and then kill himself.

**{7}** At his wife's apartment, Defendant left his gun in the car and approached the apartment with the utility knife and screwdriver. While crawling through the bedroom window, Defendant encountered Smith, who was alone in the bathroom. Defendant bound Smith with tape, questioned him about the affair, and eventually removed the tape. The two men then drove to Defendant's motel. Inside the motel room, Defendant killed Smith by stabbing him to death.

**{8}** Defendant then went back to his wife's apartment and waited inside for her to get home. Jahaira testified that when she arrived at her apartment, Defendant surprised her, pointed a gun at her, called her a "fucking bitch," and hit her on the head with the gun. Defendant interrogated Jahaira about their son's true biological father and about sex acts she had committed with Smith. Defendant then showed her Smith's shredded T-shirt and shorts and told her to look in the kitchen for her knife, which was missing. After threatening to kill himself, Defendant forced Jahaira to wear a hat to cover her bleeding head wound and then drove her to the motel at gunpoint to see Smith's body. After viewing the body and arguing with Jahaira about whether Defendant would kill her, kill himself, kill them both, or escape to Mexico, Defendant ultimately decided to surrender to the New Mexico State Police.

**{9}** At his jury trial, Defendant was convicted of murder in the second degree, two counts of kidnapping in the first degree, aggravated burglary, aggravated assault, and interference with communications. In order to convict Defendant of aggravated burglary of his wife's apartment, the jury had to find that his entry into the apartment was unauthorized. *See* NMSA 1978, § 30-16-4 (1963) ("Aggravated burglary consists of the unauthorized entry of any . . . dwelling."); *see also* UJI 14-1632 NMRA (including unauthorized entry among the essential elements of aggravated burglary). The district court granted Defendant's motion for judgment of acquittal notwithstanding the verdict on the burglary conviction, agreeing with Defendant that Section 40-3-3 precluded conviction based on an entry into a spouse's dwelling.

**{10}** Both parties appealed to the Court of Appeals, which affirmed the judgment of the district court. *Parvilus*, 2013-NMCA-025, ¶¶ 1, 47. The Court concluded that Section 40-3-3 allows a spouse to enter the other spouse's separate dwelling without permission, even upon entry with the intention to commit a felony. *Parvilus*, 2013-NMCA-025, ¶ 23. The Court of Appeals recognized that "[i]nter-spousal burglary commonly leads to domestic violence" but determined that Section 40-3-3 precludes prosecution for burglary between spouses. *Parvilus*, 2013-NMCA-025, ¶ 23. Although it acknowledged that its holding "provides immunity to someone who burglarizes the residence of an estranged spouse," the Court concluded that "it is for the Legislature to determine whether to amend the statute to eliminate this immunity." *Id.*

**{11}** We granted the State's petition for writ of certiorari to review the precedential statutory interpretation issue. *Parvilus*, 2013-NMCERT-002.

## III. DISCUSSION

**{12}**     This case requires that we address the relationship between two statutes, one criminal and the other civil. The criminal statute provides,

> Aggravated burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with intent to commit any felony or theft therein and the person either:
>
> A.     is armed with a deadly weapon;
> B.     after entering, arms himself with a deadly weapon;
> C.     commits a battery upon any person while in such place, or in entering or leaving such place.
>
> Whoever commits aggravated burglary is guilty of a second degree felony.

NMSA 1978, § 30-16-4.

**{13}**     The civil statute provides, "Neither husband nor wife has any interest in the property of the other, but neither can be excluded from the other's dwelling." Section 40-3-3.

**{14}**     No reported case has addressed the issue of whether Section 40-3-3 precludes application of the burglary provisions of the New Mexico Criminal Code to a defendant who enters a spouse's separate residence without authorization and with the intent to commit the crimes specified in the burglary statutes. *See State v. Rubio*, 1999-NMCA-018, ¶ 12, 126 N.M. 579, 973 P.2d 256 (indicating in dicta, but without reference to Section 40-3-3, that burglary statutes can be enforced against defendants who enter their spouses' separate residences with the requisite criminal intent). This case requires that we do so.

**{15}**     "The meaning of language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. Our primary goal is to give effect to the intent of the Legislature. *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. "In addition to looking at the statute's plain language, we will consider its history and background and how the specific statute fits within the broader statutory scheme." *Chatterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283. Though we may not "second-guess[] the clear policy of the Legislature, when the statute is ambiguous, we may nonetheless consider the policy implications of the various constructions of the statute." *State v. Rivera*, 2004-NMSC-001, ¶ 14, 134 N.M. 768, 82 P.3d 939 (citation omitted). "[I]t is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352.

**{16}**     Finally, statutes relating to the same general topic should be interpreted in light of

each other, "the theory being that the court can discern legislative intent behind an unclear statute by reference to similar statutes where legislative intent is more clear." *State v. Cleve*, 1999-NMSC-017, ¶ 13, 127 N.M. 240, 980 P.2d 23 (internal quotation marks and citation omitted).

**{17}** In 1929, this Court construed the legislative intent behind the 1907 enactment of which Section 40-3-3 was a part, stating that "the Legislature of this state undertook to treat the whole matter of property rights of husband and wife. . . . [T]he act seems to be a comprehensive effort to define and treat the subject of community property." *State v. Chavez*, 1929-NMSC-067, ¶ 4, 34 N.M. 258, 280 P. 241. Across the country, similar laws were "part of a national campaign to sweep away the common law web of limitations and disabilities which had entangled a married woman's rights to own and dispose of property." *See* Jane M. Keenan, Comment, *The End of an Era: A Review of the Changing Law of Spousal Burglary*, 39 Duq. L. Rev. 567, 570 (2001) (internal quotation marks and citation omitted); *see also Thompson v. Thompson*, 218 U.S. 611, 615 (1910) ("Under these laws [the wife] has been empowered to control and dispose of her own property free from the constraint of the husband, in many instances to carry on trade and business, and to deal with third persons as though she were a single woman. The wife has further been enabled by the passage of such statutes to sue for trespass upon her rights in property, and to protect the security of her person against the wrongs and assaults of others."). Prior to the passage of these laws, at common law married women could generally neither form contracts nor acquire or dispose of property without the permission of their husbands. *Id.* at 614-15.

**{18}** In the same year that it passed Section 40-3-3, our Legislature enacted a series of other domestic relations laws intended to better define the rights of married women. *See, e.g.*, NMSA 1978, § 40-2-1 (1907) (stating that "[h]usband and wife contract toward each other obligations of mutual respect, fidelity and support"); NMSA 1978, § 40-2-2 (1907) (specifying the rights of husband and wife to contract mutually or the right of either to contract with others); NMSA 1978, §§ 40-2-4 to -7 (1907, as amended through 1973) (describing the execution and recording of marriage settlement and separation contracts); NMSA 1978, §§ 40-2-8 to -9 (1907) (explaining the extent to which husband and wife can contract to alter their legal relationship and the consideration required for such a contract); NMSA 1978, § 40-3-1 (1907) (establishing that "[t]he property rights of husband and wife are governed by this chapter"); NMSA 1978, § 40-3-2 (1907) (explaining how husband and wife may hold property).

**{19}** Notably, all of these statutes concern property rights as they relate to domestic relations and are codified in the Domestic Affairs chapter of our current laws. *See* NMSA 1978, §§ 40-1-1 to 40-15-4 (1859, as amended through 2013). There is no reference to Section 40-3-3 in the burglary statutes, NMSA 1978, §§ 30-16-3 to -4 (1963, as amended through 1971), or anywhere else in the Criminal Code, NMSA 1978, §§ 30-1-1 to -53-3 (1963, as amended through 2014), which is compiled as the Criminal Offenses chapter. Similar placement of the same marital property provisions in the Ohio domestic relations statutes, without reference to criminal statutes, led the Ohio Supreme Court to overturn an

5

appellate court and reinstate a husband's conviction for burglary of his wife's separate residence. *See* Ohio Rev. Code Ann. § 3103.04 (West 1953) ("Neither husband nor wife . . . can be excluded from the other's dwelling."); *State v. Lilly*, 717 N.E.2d 322, 325, 328 (Ohio 1999) (same); *see also State v. O'Neal*, 721 N.E.2d 73, 81-82, 91 (Ohio 2000) (relying on *Lilly* in affirming a defendant's conviction for aggravated burglary of his wife's residence). Just as in this case, a lower appellate court in *Lilly* had determined that Ohio's equivalent of Section 40-3-3 negated criminal liability for spousal burglary. *Lilly*, 717 N.E.2d at 325-26. Ohio's highest court determined that the fact that the legislature had placed the statute under the domestic relations title of Ohio's laws indicated the law was inherently civil in nature, not criminal. *Id.* at 325-26. Having identified seven other jurisdictions, including New Mexico, with laws equivalent to Section 40-3-3 and finding no evidence that those jurisdictions applied their laws in the criminal context, the Ohio Supreme Court concluded that "[p]rivileges of a husband and wife with respect to the property of the other were not meant to be enforced criminally and do not affect criminal liabilities." *Lilly*, 717 N.E.2d at 326.

**{20}** As early as 1965, the California Supreme Court declined to apply a spousal-nonexclusion civil statute equivalent to Section 40-3-3 to criminal cases involving spouses with separate residences. *See People v. Sears*, 401 P.2d 938, 944 (Cal. 1965) (in bank) ("[S]ince defendant had moved out of the family home three weeks prior to the crime, he could claim no right to enter the residence of another without permission."), *overruled on other grounds by People v. Cahill*, 853 P.2d 1037, 1059 n.17 (Cal. 1993) (in bank)); *see also People v. Davenport*, 219 Cal. App. 3d 885, 892 (Cal. Ct. App. 1990) ("[The California Civil Code] does not endow one with the right to burglarize the dwelling of his or her estranged spouse. An entry for anything but a legal purpose [is] a breach of [the spouse's] possessory rights." (alterations in original) (internal quotation marks and citation omitted)); *McDuff v. McDuff*, 187 P. 37, 38-39 (Cal. Ct. App.1919) (affirming a wife's right to eject her estranged husband from her separate property despite a spousal nonexclusion statute).

**{21}** While the decisions in *Sears* and *Davenport* relied on the criminal intent of the estranged spouse rather than on the placement of the nonexclusion statute in a domestic relations chapter as in *Lilly*, we note that two years after *Davenport* the California legislature removed California's version of Section 40-3-3 from the general civil laws provisions and placed it in its Family Code. *See* Cal. Civ. Code §§ 5102 to 5104 (West) (repealed 1992); 1992 Cal. Legis. Serv. Ch. 162 (West) ("repeal[ing] the provisions [including Sections 5102 to 5104] and enact[ing] them as recasted as the Family Code, operative January 1, 1994"). The legislature took no action to overcome *Davenport*.

**{22}** We interpret Section 40-3-3 as precluding separate property ownership itself from being lawful grounds for exclusion of a spouse from a dwelling that serves as the joint marital residence. But much like spousal immunity for rape, which existed in New Mexico until 1991, complete immunity for burglary of a separate residence of a spouse would be a legal anachronism. *See* NMSA 1978, § 30-9-11 (1987, amended 2009) (providing that criminal sexual penetration is perpetrated by "other than one's spouse"); 1991 N.M. Laws,

6

ch. 26, § 1 (removing spousal immunity from the criminal sexual penetration statute); Lisa Dawgert Waggoner, *New Mexico Joins the Twentieth Century: The Repeal of the Marital Rape Exemption*, 22 N.M. L. Rev. 551, 552, 562 (1992) (noting that the repeal of spousal immunity for rape reflected a transition from "protect[ing] a property interest . . . to protect[ing] personal safety"). We can discern no suggestion in any available source that our Legislature ever intended Section 40-3-3 to apply in circumstances in which a defendant breaks into the separate residence of a spouse with intent to commit a crime inside that residence. Such an application of the language of Section 40-3-3 would lead to the absurd result of allowing a domestic relations statute governing marital property to negate the New Mexico Family Violence Protection Act, NMSA 1978, §§ 40-13-1 to -12 (1987, as amended through 2013), allowing spouses to file for protection from domestic violence offenses and property crimes such as criminal trespass. *See* § 40-13-2(D) (listing types of domestic abuse that may qualify the victim for protection by court order); *see also* § 14-13-2(E) (protecting spouses from abuse under the act).

**{23}**     We align ourselves with the other jurisdictions that have decided the issue and hold that the marital property provisions of statutes such as Section 40-3-3 do not provide immunity from prosecution for burglary of a spouse's separate residence. Our holding is also in line with numerous other jurisdictions that do not have a statute equivalent to Section 40-3-3 but have addressed the issue of spousal burglary. *See, e.g.*, *People v. Johnson*, 906 P.2d 122, 123-24, 126 (Colo. 1995) (en banc) (reversing the trial court's dismissal of burglary charges and ruling that a defendant husband who broke into his estranged wife's apartment may have had an economic interest in his wife's lease but had no "possessory right or a license or privilege to make an unauthorized entry"); *Cladd v. State*, 398 So. 2d 442, 443 (Fla. 1981) (holding that a husband physically separated from his wife for six months without a separation agreement or restraining order did not have ownership or possessory interest in his wife's apartment and could therefore be charged with burglary), *overruling Vazquez v. State*, 350 So. 2d 1094, 1097 (Fla. Dist. Ct. App. 1977) (holding that without court orders of separation or restraint a husband physically separated from his wife could not be prosecuted for burglary for nonconsensual entry into his wife's separate residence); *Parham v. State*, 556 A.2d 280, 284-85 (Md. Ct. Spec. App. 1989) (upholding a husband's conviction for burglarizing his estranged wife's home and citing cases from seven other states including Florida that have held that defendants could be prosecuted for burglarizing the other spouse's dwelling). As our Court of Appeals acknowledged fifteen years ago, the "overwhelming weight of authority from other jurisdictions" supports enforcement of burglary statutes against defendants who enter their spouses' separate residences with the requisite criminal intent. *Rubio*, 1999-NMCA-018, ¶ 12. No case from any jurisdiction has since held to the contrary.

**{24}**     Because the evidence in this case established that Defendant and his wife had agreed that the apartment was to be her separate residence, that he would not have a key, that he did not have her permission to enter, and that he entered surreptitiously through a window before committing his crimes, Defendant was lawfully convicted of aggravated burglary, and his conviction should be reinstated.

## IV.    CONCLUSION

**{25}**    Because we conclude that the marital property provisions of Section 40-3-3 do not provide immunity from prosecution for burglary of a spouse's separate residence, we reverse both courts below and remand to the district court with instructions to enter an amended judgment and sentence reinstating Defendant's aggravated burglary conviction.

**{26}    IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**